Dorthea E. Donaldson, J.
This claim, timely filed and neither assigned nor submitted to any other court or tribunal, seeks recovery, due to the alleged negligence of the State of New York, of damages for personal injuries. The claim of Edward Stein arose from an alleged assault on July 24, 1974 by a State Trooper on the premises of Hillcrest Shell, Inc., located at Route 45 near its intersection with Locust Street in the Town of Ramapo, County of Rockland, New York.
Claimant contended that Trooper Clarence D. Smith of the New York State Police recklessly, carelessly and negligently assaulted and physically struck him with a revolver and fists during his arrest for various narcotics offenses. Thereafter, Trooper Smith swore to a complaint charging Stein with resisting arrest. Claimant’s injuries were identified as lacerations of the scalp, left temple, mid-forehead and nose which required sutures, administered at the Ramapo General Hospital, in Ramapo, New York.
Mr. Stein testified that, on the day in question at about 12:15 p.m., he and Howard Silver, in Silver’s car, left Rockland Community College where they had made an inquiry to rent a field house for a rock concert and then drove to the Hillcrest Shopping Center where claimant met Barry “Butch” Ruhl; he returned to Silver’s house to drive his 1972 Audi automobile, drove to and parked in the shopping center parking lot where Ruhl placed a package, the contents of which were unknown to him, in the trunk of his car; at approximately 12:50 P.M., upon instructions from Ruhl, they drove in his car to Sea Isle to meet a friend of Mr. Ruhl; that the friend was not at Sea Isle so they returned to Hillcrest Shopping Center; they repeated this trip with the same result until, when again driving toward the shopping center, as they waited for the change of the red traffic light at the intersection of Eckerson Road and Main Street, a green Mustang automobile was seen at the right of his vehicle; Ruhl advised him that the driver was his friend and to follow him; he did so as far as the Loyola Bakery where the Mustang made an illegal left turn into the bakery parking lot; he turned right into the Shell station and stopped; the Mustang followed him into the Shell station and stopped in front of his car; Ruhl stepped out from his car, walked to the Mustang, conversed with his “friend” and then left; a man came from the Mustang, walked toward his car, pointed a gun at him and told him to get out of the car; he did so and placed his back against the vehicle; the gun *183 at all times was pointed at his forehead; he asked the man "Are you the man?”, "Are you ripping me off?”, "What is going on?”, whereupon the man struck him with the revolver in the left temple area, forehead, back of the head and nose; he fell to the rear of the car, bleeding and in shock, opened the trunk, tried to give the man the bag allegedly placed therein by Mr. Ruhl, after which he tried to flee and ran about three feet; the "man” was "on his back” holding a gun to his neck; the events at this time became "bloody and hazy”; another car drove up, people stepped out, identified themselves as officers, pulled him up, put him against their car, searched, handcuffed and placed him in the back seat of the car; he was taken to Ramapo General Hospital for treatment; later he was removed to the Stony Point Police Barracks where he was questioned and signed a typewritten statement which he did not read; he was then transported to a Justice of the Peace’s home, arraigned and incarcerated in the New City jail; he did not know the identity of Ruhl’s "friend” until after his arrest when he was informed that the "friend” was, in fact, Officer Clarence D. Smith, a New York State Police undercover agent.
Upon cross-examination, Edward Stein stated he did not remember the name of the college administrator seen at Rockland Community College that morning; he did not know the contents of the bag or carton which Ruhl had placed in his car trunk; he was not selling marijuana to Trooper Smith; Trooper Smith did not at any time identify himself as a police officer; he signed the statement at the Stony Point Police Barracks before Officer C. P. Purcell only after receiving the advice from Officer Purcell that the statement was for his own records and would not be used against him in any legal proceedings.
The defendant maintained that as of July 24, 1974, Trooper Smith, a State Police officer for five years and an undercover agent for one year, was engaged in a "buy and bust” operation at the Hillcrest Shopping Center and was assigned a back-up team of two other troopers to assist in any arrest that might develop.
Trooper Smith testified that at about 11:00 to 11:30 a.m., on July 24, 1974, he approached Stein in the Hillcrest Shopping Center, talked about a deal, was shown two open bags in the trunk of claimant’s car which he believed contained marijuana; he did not make an arrest at this time because he did *184 not see his back-up team nearby and because claimant wanted to obtain a scale to weigh the marijuana, so that it was agreed that they would meet in an hour; he located his back-up team and as he was returning to the Hillcrest Shopping Center, claimant blew his horn, motioned him to pull over, whereupon he pulled into the Shell station and was followed therein by claimant; only claimant’s passenger got out of claimant’s car, walked to his car and spoke to him, after which he got out of his car and approached the Stein vehicle; he drew his revolver, showed his I.D. card and told Stein to turn off the car’s ignition, remove the keys and get out of the car, which claimant did; the two went to the trunk of claimant’s car from which Stein took a bag of marijuana and started to run between some parked cars until he fell; he grabbed Stein with his left hand, lifted him to his feet and attempted to bring him back to the car; after a few steps, claimant started kicking and punching; in order to control him, it was necessary to strike claimant with his right hand in which he had "palmed” his snub-nosed five-shot Smith and Wesson revolver; he struck Stein with his right hand three or four times; the back-up team arrived and the three troopers in concert subdued claimant. This testimony was corroborated by one of the officers of the back-up team.
Noting that the underlying felony and misdemeanor charges placed against claimant are still pending, the court restricts its comments to the means of effecting claimant’s arrest.
Subdivision 1 of section 35.30 of the Penal Law states:
"A peace officer, in the course of affecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force; except that he may use deadly physical force for such purposes only when he reasonably believes that:
"(a) The offense committed by such person was:
"(i) a felony or an attempt to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person; or
"(ii) kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or
*185 "(b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape from custody, such person is armed with a firearm or deadly weapon; or
"(c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force.” (Emphasis supplied.)
As stated in Practice Commentaries by Arnold D. Hechtman (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 35.30, p 115) section 35.30 establishes the quantum of physical force which may be used in making arrests and preventing escapes. He states: "The chief proposition postulated by subdivision 1 is, in substance, that a peace officer having reasonable cause to believe that a person has committed an offense ordinarily may, in order to arrest him, use as much physical force, short of the deadly variety, as he reasonably believes necessary to effect the arrest.” (Emphasis supplied.) In section 10.00 of the Penal Law definitions of terms, the court observes that subdivision 11 defines deadly physical force as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.” Serious physical injury is defined in subdivision 10 of section 10.00 thereof, as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement(Emphasis supplied.)
In this claim, Stein, height 5 feet 9 inches, slight build, weight 145 to 150 pounds, somewhat disoriented, was opposed by an officer 6 feet 3 inches in height and weighing approximately 185 pounds. Since the testimony reflected that during the arrest the claimant was punching and kicking the officer, the trooper was justified in using sufficient physical force needed to effect the arrest. Trooper Smith admitted that claimant’s protestations and hysterical conduct did not injure him.
No proof or testimony was submitted to indicate the recognized proper procedure for revolver safety to be observed by a State Trooper in effecting the arrest of an . unwilling person. While the court can visualize the difficulty to "disengage” a revolver from the officer’s hand, it cannot accept the defendant’s contention that the trooper was not permitted to remove his revolver from his hand and that his only alternative was *186 to use the hand with the gun as he hit the claimant several times. At the time the officer struck Mr. Stein, there were no reasonable grounds for the officer to believe Stein was armed with a firearm or other deadly weapon or that claimant had threatened to use deadly physical force thereby justifying the use of deadly physical force. Striking with a service revolver, by definition, goes beyond the realm of physical force into the realm of deadly physical force. Such force shall not be exercised carelessly or unnecessarily. (Lippert v State of New York, 207 Misc 632.)
The court therefore believes, and so finds, that the degree of force used to effect claimant’s arrest amounted to deadly physical force, was excessive under the circumstances and that the defendant is liable in damages therefor.
Accordingly, claimant Edward Stein is awarded the sum of $4,500, of which $116.90 represents medical costs.
Motions upon which decision was reserved, and not herein-before ruled upon, are now denied.